WESTERN ELECTRIC CO. v. AMERICAN RHEOSTAT CO. et al.

(Circuit Court, E. D. Wisconsin. July 5, 1898.)

1. PATENTS—CUT-OUT FOR ELECTRIC MOTORS.
	The Warner patent, No. 565,867, for a cut-out for an electric motor, discloses a combination which was not anticipated and was patentable, in view of the prior state of the art. The inclosing or casing in of the switch which separates it from, and makes it independent of, the contact arm, is not an essential feature of the combination shown, and the patent is infringed by a device which is essentially the same with the exception of such feature.

2. SAME — PRIORITY OF INVENTION — FORFEITURE AND REINSTATEMENT OF APPLICATION.
	The fact that an application is forfeited for inadvertence, and subsequently reinstated, does not affect the question of priority of invention in favor of a patent granted earlier, but on a later application.

In Equity.

Barton & Brown and Albert L. Lawrence, for complainant.
Winkler, Flanders, Smith, Bottum & Vilas, for defendants.

SEAMAN, District Judge.   The patent in suit is for a cut-out for electric motors containing four combination claims, all of which are alleged to be infringed by the defendants' device.   Infringement is clearly established, unless the feature by which the switch is covered, concealed, or separated, and made independent of the contact arm, constitutes an essential element of the patent combination, or, as stated on behalf of the complainant, the gist of Warner's invention.   Therefore, as that feature is omitted by the defendant, the inquiry is twofold:   (1) Whether that is an essential element, and (2) whether there is patentable novelty in the invention, discarding such feature.

1. The contention for the defendants is, in effect, that the definition in claims 1, 2, and 3 of the combination, with a rheostat included in the armature circuit, and provided with a contact arm adapted to be moved to cut in and out resistance of a switch in the same circuit, independent of said contact arm, etc., refers solely to the feature of the covering, which renders the switch inaccessible to the operator; and that such meaning appears from the descriptions of the switch in the specifications,—that it is inaccessible directly, and can only be closed by moving the contact arm of the rheostat to cut in the starting resistance, the switch being closed by that operation; and the further specification that the magnet, e, contact fingers, d, and arm, $d^2$, are inclosed in a casing, and thus made inaccessible readily to the attendant, so that the only way of closing the switch is by moving the contact arm to cut in the starting resistance.   If this element of independence named in the claims were clearly applicable to the inaccessibility mentioned in the specification, and especially if it can be given no other application, there would be force in the contention.   But I am satisfied that the terms independent of said contact arm were neither so intended nor so applicable; that they should not be paraphrased, as interpreted by Mr. Bates, to read "means for making inaccessible the switch arm of the device," or any equivalent terms; and that, whatever importance they may have in defining the claims, the view stated by Mr. Warner is more reasonable, namely:

"The contact arm of the rheostat, with its series of segments or contacts, is one switch.   The switch in the armature circuit which is held closed by a responsive device adapted to release it whenever current through the motor ceases is another switch.   The meaning conveyed by the words mentioned is, therefore, that while the two switches are in the same circuit, and in series with each other, they are allowed a certain independence of action.   A cessation of current does not cause a movement of the rheostat arm, but does cause a movement of the other switch arm.   The placing of a casing over a portion of the mechanism as described has no material effect upon the independence contemplated in the claim."

The casing is a mere matter of detail, protecting against careless handling; but its omission would not interfere in the least with the normal operation of the mechanism, and it is not made an essential element of the combination, nor even shown in the drawings.

2. The defendants' device is in accord with patents No. 555,503, to Gibbs, dated March 3, 1896, and No. 578,707, to Bacon, dated March 16, 1897, under which a justification is asserted, but cannot be sustained, as the complainant's patent is issued upon an application

filed March 5, 1895, and antedated the application in both patents so referred to. The fact that the Warner application was forfeited for inadvertence, and subsequently reinstated, cannot affect this priority; and no issue of fact is raised upon the question of the actual priority of any invention in the device. The inquiry must be directed, therefore, to the issue of patentability, in view of the prior patents and the state of the art; and it involves difficulty, if not serious doubt, when consideration is given to the nice distinctions in the advance of electric art, and the purposes and realizations of the prior devices. It is apparent that Warner, Gibbs, and Bacon were each seeking the same end in a controlling mechanism for electric motors, which would save the armature from injury when the current is turned on, and before the counter electromotive force is generated by rotation of the armature. In Warner's patent the object is stated to be to provide means for preventing the starting of a motor without first cutting in the starting resistance of the rheostat. As better defined in the Gibbs patent, it is to avoid injury to the motor by an abrupt increase of current through the armature, or the sudden closing of the armature circuit, so as to allow the full current to pass through the armature before it has time to get under motion, and generate a counter electromotive force. The Bacon patent states that it is designed to control the flow of the electric current to a motor to prevent the premature passage of the full current through the armature thereof. The elements which enter into the combination of each in working out the alleged invention are, in my opinion, substantially identical as above indicated; and, if the combination is patentable, the Warner device owned by the complainant must prevail. The fact that the several elements are not novel cannot defeat the patent, if they co-operate in a new combination, and produce novel results.

For the defense of anticipation, numerous patents are set up in the answer, and introduced at the hearing, but, other than the following, are not referred to by the experts, or relied upon in the argument on behalf of defendants; therefore consideration is required of six prior patents only: Lozier's patent, No. 492,036, February 21, 1893; Whittingham's patent, No. 396,791, January 29, 1889; Knight's patent, No. 338,084, March 16, 1886; Rae's patent, No. 437,662, September 30, 1890; Blades' patent, No. 453,032, May 21, 1891; Blades' patent, No. 457,339, August 11, 1891. It is true that one and the other of these patents show elements of the combination in question, and that nearly all are present in, at least, the Lozier patent, for a purpose which seems closely identical. Others, differing in their purpose, approach the mechanism of the complainant's device with similarity more marked than in Lozier's device. But the fact remains that neither shows the device as completed by Warner; that the Warner idea, if it entered into the minds of those inventors, was not carried out in a perfected device for the purpose. The testimony of the experts for defendant concedes imperfection in each of the prior devices to the extent that neither was operative for the Warner object without alteration and the substitution of elements not in the original device; and the exhibit models which the defendant produced and operated at the hearing as purporting to show the mechanism of four

of these prior patents were thus changed—not surreptitiously, but openly—to indicate their adaptability to the same purpose; claiming that the change was of such trivial character in each case that it would readily and at once suggest itself to any ordinary mechanic seeking that purpose, and therefore involved no invention. It is manifest, however, that the purpose of the final invention was not realized in either of these devices, nor does it appear to have been contemplated in either, unless it be in that of Lozier, on which the stress of the argument for the defense centers; but that is, at best, a mere approach to the object thus assumed to have been in view, which could only be realized by the changes shown on behalf of the. defendant, and was otherwise confessedly inoperative therefor. Upon the distinctions so conceded and appearing upon the face of the prior devices, respectively, I am of opinion that each is taken out of the range of anticipatory devices for the successful combination shown by the patent in question, and that the patent is sustainable under the view stated in Topliff v. Topliff, 145 U. S. 156, 161, 12 Sup. Ct. 825, that it is not sufficient, to constitute an anticipation, that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it was not designed by its maker, nor adapted nor actually used, for the performance of such functions. However narrow the interpretation must be upon the claims of this patent, I am satisfied that claims 1, 2, and 3 are infringed by the defendants, and that decree must enter accordingly. So ordered.